

**SIGNED this 14th day of December, 2011.**

_____
**JOHN C. AKARD
UNITED STATES BANKRUPTCY JUDGE**

_____

## United States Bankruptcy Court

**Western District of Texas
San Antonio Division**

| IN RE: | BANKR. CASE NO. |
|---|---|
| HARRY E. STRETCHER & EXER E. STRETCHER | 07-51221 |
| *DEBTORS* | CHAPTER 13 |

### MEMORANDUM OF OPINION ON MOTION TO MODIFY PLAN

The captioned Debtors filed for Chapter 7 on May 17, 2007. Their case was converted to Chapter 13 on December 19, 2007. The Debtors' Chapter 13 plan was confirmed on July 7, 2008 [Docket No. 61]. The Debtors' plan provided for 60 monthly payments of $530.00, for a total plan base of $31,800.00. The plan provided that unsecured creditors would receive approximately 17% of their allowed claims [*see* Docket No. 27].

1

Post-confirmation, on August 14, 2009, the Debtors filed an Application to Employ Special Counsel [Docket No. 71] to pursue a cause of action on behalf of the Debtors for a violation of the Texas Deceptive Trade Practices Act ("DTPA") that allegedly accrued on or about February 10, 2007 (before the Debtors' filed their original Chapter 7 petition). The court granted this application by order dated September 15, 2009 [Docket No. 73].

On July 13, 2011, the Debtors filed a Motion to Compromise Controversy and Authorize Disbursement of Settlement Proceeds [Docket No. 79]. In this motion, the Debtors proposed to settle their DTPA claim against Consumer Credit Counseling Service of Greater San Antonio and Paula Sutton for $22,500.00. After attorneys' fees and costs, the net proceeds of this settlement came to $12,633.00.[1] The Chapter 13 Trustee objected to the Debtors' proposed settlement [Docket No. 79] on the grounds that the settlement proceeds constituted a post-petition asset that had to be added to the base of the Debtors' confirmed Chapter 13 plan. Nonetheless, the court orally granted the Debtors' motion on October 11, 2011, with an order due from the Chapter 13 Trustee. This order has not yet been filed.

On October 26, 2011, the captioned Debtors filed a Motion to Modify their Chapter 13 plan (the "Motion") [Docket No. 82]. The Motion recites that the Debtors have 14 months of payments left under their plan and no remaining unsecured creditors. The Debtors also represented in their Motion that, pursuant to their original Chapter 13 plan, unsecured creditors were to receive payments totaling $10,266.00[2] over the life of the Debtors' plan. Of this amount, $6,678.00 remains to be paid over the next 14 months. The Debtors seek to modify their Chapter 13 plan by making a lump sum payment of $2,367.00 from the $12,633.00 they received in the recent settlement of their DTPA claim. They do not seek to modify the amount of their monthly

---

[1] Neither the Debtors' DTPA claim nor the settlement proceeds were ever listed in the Debtors' schedules—the most recent amended schedules having been filed on May 7, 2008.
[2] The Debtors' schedules filed in this case list their total unsecured debt at over $36,000.00.

2

payments or shorten the length of their plan. The lump sum payment of $2,367.00 represents the difference between the amount the Debtors received in settlement of their cause of action and the amount the Debtors' Chapter 13 plan provides in payments to unsecured creditors. The Debtors' argument appears to be that, under a liquidation analysis performed now, which is a requirement for plan modifications, *see* 11 U.S.C. §1329(b)(1), 11 U.S.C. §1325(a)(4), the Debtors' only non-exempt asset would be the proceeds of the DTPA settlement—valued at $12,633.00.[3] Accordingly, argue the Debtors, because the unsecured creditors are already receiving a total of $10,266.00 under the plan, the Debtors should now only have to pay the difference between that amount and the current liquidation value of their non-exempt property (the settlement proceeds) of $12,633.00. This comes out to $2,367.00. The Debtors propose to pay this amount as a lump sum now, while continuing to make the originally scheduled plan payments for the duration of the plan (14 more months).

The Chapter 13 Trustee filed an Objection to the Motion to Modify in which the Trustee asserts that the $12,633.00 constitutes additional disposable income and should be paid into the plan [Docket No. 83]. In their original schedules, the Debtors stated that they owed over $36,000.00 in unsecured debts. The claims register in this case reveals that 6 claims have been filed for a total amount of approximately $37,000.00. Thus, even with the addition of these funds, the unsecured creditors will not be paid in full. For the reasons discussed below, the Debtors' Motion will be denied.

*Discussion*

In their Application to Employ Special Counsel [Docket No. 71] the Debtors state that their DTPA claim accrued on February 10, 2007. The Debtors filed their Chapter 7 petition for

---

[3] In the order confirming the Debtors' original Chapter 13 plan [Docket No. 61], the court found that the liquidation value of the Debtors' non-exempt property, as of the date of confirmation, was $0.00.

3

relief on May 17, 2007. That case was converted to the present Chapter 13 case on December 19, 2007. "Section 541 of the Bankruptcy Code provides that virtually all of a debtor's assets, including causes of action belonging to the debtor at the commencement of the bankruptcy case, vest in the bankruptcy estate upon the filing of a bankruptcy petition." *Kane v. Nat'l Union Fire Ins. Co.*, 535 F.3d 380, 385 (5th Cir. 2008) (citing 11 U.S.C. § 541). Additionally, for Chapter 13 cases, the definition of "property of the estate" is expanded to include "all property of the kind specified in [section 541] that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted…, whichever occurs first…" 11 U.S.C. § 1306(a). Finally, the order confirming the Debtors' Chapter 13 plan provides, in accordance with the standard confirmation order for the Western District of Texas, that: "[a]ll property of the estate, including any income, earnings, or other property which may become part of the estate during the administration of the case, shall not revest in the Debtor." [Docket No. 61]. In short, the Debtors' pre-petition DTPA cause of action, and the subsequent settlement proceeds, constituted property of the Debtors' estate at all relevant times.

The question thus becomes whether the Debtors must add the total amount of the settlement proceeds to the base of their plan, or whether simply satisfying the liquidation analysis by making a lump sum payment of $2,367.00 is sufficient.

To initially confirm a Chapter 13 plan, the plan must satisfy various requirements of sections 1325(a) and (b). Particularly relevant here are sections 1325(a)(4) and 1325(b)(1). Section 1325(a)(4), referred to as the "liquidation analysis," provides:

> (a) Except as provided in subsection (b), the court shall confirm a plan if-- …
>> (4) the value, as of the effective date of the plan, of property to be distributed under the plan on account of each allowed unsecured claim is not less than the amount that would be paid on such claim if the estate of the debtor were liquidated under chapter 7 of this title on such date[.]

4

11 U.S.C. § 1325(a)(4). Section 1325(b)(1), referred to as the "disposable income test," provides that, if the trustee or a creditor objects to confirmation of the debtor's plan, the court may not approve the plan unless it "provides that all of the debtor's projected disposable income to be received in the applicable commitment period beginning on the date that the first payment is due under the plan will be applied to make payments to unsecured creditors under the plan." 11 U.S.C. § 1325(b)(1)(B).

Here, the Debtors argue that, while initial confirmation of a plan requires satisfaction of both the liquidation analysis and—upon objection by a creditor or the trustee—the disposable income test, modification of a Chapter 13 plan requires satisfaction of only the liquidation analysis.

Section 1329 of the Code governs plan modifications. Section 1329 provides:

(a) At any time after confirmation of the plan but before the completion of payments under such plan, the plan may be modified, upon request of the debtor, the trustee, or the holder of an allowed unsecured claim, to--
    (1) increase or reduce the amount of payments on claims of a particular class provided for by the plan;
    (2) extend or reduce the time for such payments;
    (3) alter the amount of the distribution to a creditor whose claim is provided for by the plan to the extent necessary to take account of any payment of such claim other than under the plan …

(b) (1) Sections 1322(a), 1322(b), and 1323(c) of this title [11 USCS §§ 1322(a), 1322(b), and 1323(c)] and the requirements of section 1325(a) of this title [11 USCS § 1325(a)] apply to any modification under subsection (a) of this section.

11. U.S.C. § 1329. It is clear that the liquidation analysis applies to the Debtors' proposed plan modification. *See In re Stinson*, 302 B.R. 828, 832 (Bankr. D. Md. 2003) ("When considering a plan modification where assets have not re-vested and thus are estate assets at the time of sale, the court is required to perform a liquidation analysis under Section 1325(a)(4) as of the time of the requested modification, not as of the date of confirmation of the original plan."). However,

5

there is a split in authority on the issue of whether the section 1325(b)(1) disposable income test applies to plan modifications. Although it now appears to be the minority position,[4] this court agrees with the bankruptcy court for the Northern District of Texas which concluded that "[a]though section 1329 does not expressly state that a postconfirmation modification must satisfy the disposable income test, [this court has] held that a modification of this nature must satisfy Code § 1325(a)(1), which (at least if the modification is proposed by the debtor) indirectly necessitates compliance with the disposable income test." *In re Braune*, 385 B.R. 167, 170 (Bankr. N.D. Tex. 2008) (citing *In re Nahat*, 315 B.R. 368, 377 (Bankr. N.D. Tex. 2004); *In re Solis*, 172 B.R. 530, 532 (Bankr. S.D.N.Y. 1994); *In re Martin*, 232 B.R. 29, 36-37 (Bankr. D. Mass. 1999), and noting that "[s]ection 1325(a)(1) requires the plan or postconfirmation modification to conform to the 'provisions of this chapter and with other applicable provisions of this title.'"); *see also In re Riddle*, 410 B.R. 460, 463 (Bankr. N.D. Tex. 2009) (confirming debtors' plan modification after concluding, among other things, that "substantially all of Debtors' disposable income will be committed to the plan going forward");[5]

---

[4] *See In re Grutsch*, 453 B.R. 420, 424 (Bankr. D. Kan. 2011) (noting that "although there is a split in authority, the vast majority of courts deciding the issue have held that post-confirmation modifications are not governed by 11 U.S.C. § 1325(b).").

[5] *But see In re McCollum*, 363 B.R. 789, 798 (E.D. La. 2007) ("When a debtor seeks to modify a confirmed plan to reduce the time required to make payments, Section 1329(b)(1) provides that the requirements of Section 1325(a) apply to the modification. Section 1325(a) includes the 'best interests of the creditors' test but not the disposable income test, which is included in Section 1325(b). The Trustee argues that the provisions of Section 1325(b) are incorporated by reference in Section 1325(a). This argument is unpersuasive. Section 1329(b)(1) explicitly provides that, along with Section 1325(a), Sections 1322(a) and (b) apply to post-confirmation modifications. It is unlikely that Congress chose to list specific subsections of the Code that would be applicable to post-confirmation modifications but chose to omit Section 1325(b) because it is incorporated by reference in another section. Thus, the plain meaning of the statute supports the bankruptcy court's conclusion that, even if early termination constituted a plan modification, such modification was not subject to the disposable income test."); *In re Gonzalez*, 2008 Bankr. LEXIS 2056, at *34-35 (Bankr. S.D. Tex. July 3, 2008) ("When considering whether to approve a proposed modification, the Court considers §§ 1322(a)-(b), 1323(c) and 1325(a). Notably absent is § 1325(b). Accordingly, when considering a modification, the Court considers (among other things) whether the modification was proposed in good faith, but does not consider § 1325(b)'s projected disposable income test.").

6

This conclusion—that the disposable income test applies in the context of plan modifications—supports and conforms to the general rule that the trustee (or a creditor or the debtor) may request a plan modification in the event a debtor's income increases post-confirmation. *See United States Tr. v. Cortez (In re Cortez)*, 457 F.3d 448, 457 (5th Cir. Tex. 2006) (stating that, under section 1325(b)(1)(B), "[i]f the trustee objects to the plan confirmation, the court may not approve the plan unless it 'provides that *all* of the debtor's projected disposable income to be received [during the plan] will be applied to make payments under the plan.' 11 U.S.C. § 1325(b)(1)(B) (emphasis added)"; and further stating that "[e]ven if the plan, as initially proposed, is confirmed, § 1329 allows the trustee to seek a subsequent modification of the plan based on an increase in the debtor's income, so that more money is paid to the creditors.").

Having concluded that, contrary to the Debtors' assertions, the "disposable income test" (as well as the liquidation analysis) applies to plan modifications, the next question becomes whether the Debtors' post-confirmation settlement proceeds constitute "disposable income" such that these proceeds must be added to the base of the Debtors' Chapter 13 plan. Before BAPCPA was enacted, "disposable income" was defined as "income which is received by the debtor and which is not reasonably necessary to be expended . . . for the maintenance and support of the debtor or a dependent of the debtor. . . ." 11 U.S.C. § 1325(b)(2)(A) (1994). The Bankruptcy Code now defines "disposable income" as follows: "current monthly income received by the debtor less amounts reasonably necessary to be expended—(A)(i) for the maintenance or support of the debtor or a dependent of the debtor, or for a domestic support obligation, that first becomes payable after the date the petition is filed…" 11 U.S.C. § 1325(b)(2)(A). In turn,

7

BAPCPA defines "current monthly income" the debtor's "average monthly income from all sources" during the six months preceding the filing. 11 U.S.C. § 101(10A)(A)(i).

While these definitions might suggest that a debtor's "projected disposable income" under section 1325(b)(1)(B) depends on historical data (given the definition of "disposable income" under section 1325(b)(2)), such that post-confirmation changes in a debtor's income would not change the calculation of "projected disposable income" for purposes plan modification,[6] the Fifth Circuit has concluded that "projected disposable income" is not the same thing as "disposable income," and thus the definition of "disposable income" under section 1325(b)(2) is just the starting point for determining "projected disposable income" under section 1325(b)(1)(B) (the "disposable income test"). Said the Fifth Circuit,

> As noted, Congress changed the definition of 'disposable income' in § 1325(b)(2), but left unchanged the phrase 'projected disposable income' in § 1325(b)(1)(B). We are persuaded that the independent definition of 'projected' adds to the phrase's overall meaning. The term 'projected,' not defined in the statute, means '[t]o calculate, estimate, or predict (something in the future), based on present data or trends.' *In re Jass*, 340 B.R. at 415 (quoting the Am. Heritage College Dictionary 1115 (4th ed. 2002)). In view of this definition, with which [the debtor] agrees, we interpret the phrase 'projected disposable income' to embrace a forward-looking view grounded in the present via the statutory definition of 'disposable income' premised on historical data. The statutorily defined 'disposable income' is the starting point--it is presumptively correct--from which the bankruptcy court projects that income over the course of the plan. Under this interpretation, the statutory definition of 'disposable income' is integral to the bankruptcy court's decision to confirm or reject a Chapter 13 debtor's proposed plan.
>
> Additional language in § 1325(b)(1) supports this conclusion. Specifically, the statute speaks of 'the debtor's projected disposable income to be received in the applicable commitment period.' This language links 'projected disposable income' with the debtor's income actually received during the plan, and indicates a forward-looking orientation of the phrase. Further, the statute requires the projection to be performed 'as of the effective date of the plan,' which allows for consideration of evidence at the time of the plan's confirmation that may alter the historical calculation of disposable income on Form 22C. Finally, the statute directs that projected disposable income 'be applied to make

---

[6] This reasoning has also been used as support for not applying the disposable income test to plan modifications. *See, e.g., In re Walker*, 2010 Bankr. LEXIS 3618, at *25-26 (Bankr. C.D. Ill. Oct. 21, 2010).

8

payments,' contemplating that the debtor will actually receive this money in the first place.

*Nowlin v. Peake (In re Nowlin)*, 576 F.3d 258, 263 (5th Cir. Tex. 2009). *See also In re Hardacre*, 338 B.R. 718, 722 (Bankr. N.D. Tex. 2006) (noting that "[w]hile Congress could have used the phrase 'disposable income' in section 1325(b)(1)(B) and thereby invoked its definition as set forth in section 1325(b)(2), it chose not to do so. Consequently, Congress must have intended 'projected disposable income' to be different than 'disposable income.'").

This court finds that, in accordance with the Fifth Circuit's conclusion that "analysis of a debtor's "projected disposable income," as defined in section 1325(b)(1), should take into account "evidence of present or reasonably certain future events that [will] substantially change the debtor's financial situation," *Nowlin,* 576 F.3d at 266–67, the present Debtors' settlement proceeds must be included in the Debtors' projected disposable income for purposes of plan modification.[7] The Debtors have received $12,633.00 in settlement proceeds and this has substantially changed their financial situation. In short, under the Fifth Circuit's forward-looking approach to "projected disposable income," these proceeds must be included in the Debtors' projected disposable income and added to the base of the Debtors' plan in order to satisfy the section 1325(b) disposable income test.

Finally, the Debtors argue that the proceeds should not be considered disposable income because the Debtors need to use the money to purchase a new car. No evidence was presented at the hearing regarding the Debtors' need to purchase a new car, or whether use of any or all of the settlement money is reasonably necessary to purchase the car. Accordingly, the court will deny

---

[7] To constitute "projected disposable income" the proceeds must first constitute income. Black's Law Dictionary defines "income" as: "[t]he money or other form of payment that one receives, usually periodically, from employment, business, investments, royalties, gifts, and the like.' Black's Law Dictionary (9th ed. 2009). As stated by the bankruptcy court in *In re Launza*, "[i]f gifts constitute income, then monies received in the settlement of a lawsuit also constitute income." 337 B.R. 286, 289 (Bankr. N.D. Tex. 2005).

the Debtors' Motion to Modify the Plan. The Debtors must commit the $12,633.00 in settlement proceeds to the base of their plan in repayment of their unsecured creditors.[8]

####

---

[8] The short answer to this matter is that the purpose of Chapter 13 is for the debtors to pay their bills (or as much of their bills as they can during the life of the plan). Chapter 13 should not be used as a way to play games with the creditors. The suit was not listed in the original schedules, so it was not considered when the plan was proposed. The proceeds of the suit are property of this bankruptcy estate and, as such, should be used to pay the creditors of this estate.